Case number 13-1774. Emily C. Kroll v. White Lake Ambulance Authority. Arguments not conceded. 15 minutes per side. Mr. Glazier, you may proceed to the appellant. Thank you, Ms. Deputy, and thank you, Your Honors. My name is Brad Glazier. I'm here appearing on behalf of Emily Kroll, who is the plaintiff and the appellant in this case, and I have reserved three minutes for rebuttal. This is the case about the emergency medical technician who was fired after she refused to undergo a psychological examination. This is the second time that this case has been before this panel. The case was dismissed by the district court following the defendant's second summary judgment motion, and that's what brings us here today. There are two primary issues on appeal. The first is what is required of an employer who asserts that a medical examination is a business necessity and is job-related. And secondly, what is the evidence that matters? Is it information that is marshaled after the fact, or is it the information that was known to the person who made the decision to order the exam and the reason that he ordered the exam in the first place? I'm going to talk about the law for just a couple of minutes, and then I want to talk about how that law applies to the facts of this case. We are talking about the medical examination provision that is incorporated into the Americans with Disabilities Act. It's 42 U.S.C. 121.12d.4a. The Act prohibits an employer from requiring a medical examination unless the examination is shown to be both job-related and consistent with business necessity. When the case was before this panel a year or so ago, you ruled that the district court judge had erred in concluding that the mandated psychological counseling that Emily Crowell was required to participate in was not a medical examination. You found that it was a medical examination. So the case went back to the district court, and essentially relying upon the briefs that had previously been filed, the court dismissed it on this new grounds that the employer did satisfy its burden of proof with regard to showing job-relatedness and business necessity. A showing of business necessity requires proof that the asserted business necessity is vital to the business, that the exam genuinely serves the business necessity, and that the request is no broader or more intrusive than necessary. Even though that's the objective test, but going beyond that, there is no, I mean, I should rephrase it. In order to determine whether it does meet some business objective, don't we have to get into the subjective basis for the decision, what was the decision maker's subjective motivation for requiring that? I mean, don't you have to get there in order to get to whether or not it satisfies some business necessity? Because obviously part of the protocol or whatever for that business is going to be what the determinations are. Isn't that correct? I believe so, Your Honor. And if we look at the enforcement guidelines, which the last time that this case was before the court, I think that there was unanimity among the panel that those enforcement guidelines are an important guidepost to the court. But the guidelines indicate that the medical examination must be based on objective evidence obtained or reasonably available to the employer prior to requiring a medical examination. So we know that the information has to be available to the employer ahead of time. And then the next question is, well, what if the employer's motive isn't related to the business necessity itself? And the evidence in this case is strong, both from the standpoint of Emily Crowell's testimony and the testimony of Brian Binns, that the reason for this psychological examination was not because Emily Crowell was talking on her cell phone and it's not because she was crying at work. He had a concern with regard to the fact that she had engaged in sexual relations with men that she had picked up in bars, is how he put it. Well, but what about and how should we consider the testimony of her coworkers who reported to, I guess to Binns and others that they believed her emotional state was hurting her job performance. And looking at that in the aggregate, isn't that an appropriate thing for the decision maker to consider and deciding whether or not it's a factor that ought to weigh heavily in some decision to require counseling? I think the appropriate response, Your Honor, and a lot of that information came to the employer and there should be no question about this, the employer in this case is Brian Binns. He is the one that ordered her to participate in the counseling. A lot of that information came to him after the fact, after she filed her EEOC charges and after they started marshaling affidavits and evidence in response to that. So what did Binns know when he ordered her to undergo counseling? What did he know? Very little if his deposition testimony is to be believed. So in his deposition, he indicated that he didn't recall Emily Crowell ever doing anything improper at work. He had never given her a written warning. He recalled some employee may have violated the policy about using cell phones on the job, but he couldn't remember if it was Emily Crowell or not. So all of the things that the company allegedly relied on, you say they didn't know or he didn't know? Most of the information. Well, so far you haven't said one. Even the cell phone one, you're not saying that. You're saying all he said was somebody, not necessarily Crowell. So you're not admitting a single one of these things? There's one thing that he did know, Your Honor, and I think the record is clear on this. On the day that she was fired, there was an incident between Emily Crowell and the other paramedic. This is the delivering oxygen? This is the delivering oxygen. That was clearly known to Binns. And what Emily Crowell denies that that occurred, but as I indicate in my brief, I think it's understandable how she was upset in light of the comments that went back and forth, and there was no issue with regard to patient care because, according to the testimony of the other paramedic, she just delivered the oxygen. But I guess to answer your question, Your Honor, there's very little in the record with regard to what Brian Binns knew. The concrete trumps the abstract. So concretely, you're just conceding one point, delivering oxygen. Yes. So we go through the record, that's all we're going to find that he would have known. As it relates to Brian Binns. Now, there's testimony from other witnesses that say that they told Brian Binns information. Okay. Is that contradicted? It is in the sense that Brian Binns doesn't recall it. No, I mean, to say contradicted means that he's asked, now we have testimony that so-and-so told you X. Did so-and-so tell you X? And he says no. That would be a contradiction. Now, if it's just silent, that's evidence that supports the theory he knew it, right? I don't understand how it could be otherwise. I think there's testimony in the record that says he doesn't recall. I don't think there's any testimony where he flatly denies it. So what are these things that he was told by others? He was told by others, according to the other testimony, that Emily Kroll was yelling on the phone during an ambulance drive. How about using cell phones during ambulance rides? That's the same thing, yeah. Using a cell phone and talking on a cell phone. And there's also evidence that she was texting. Did that occur, allegedly, on one occasion or more than one occasion? One occasion that I'm aware of, Your Honor. Was there testimony, though, that it occurred? Did other employees assert that there were multiple occasions on which this activity occurred? I believe that there is one witness who testified he's aware of one incident, and I think that there was another witness who testified that there were a couple. But in each of these instances, A, Binns does not recall being told this information before he demanded the counseling, and B, the plaintiff here, your client, denies having engaged in activities, correct? Yes, Your Honor. So all of these, the plaintiff denied every single one. None of it happened. Never texted, never spoke on the cell phone while driving. The oxygen incident didn't happen. Correct, Your Honor. She said something about the oxygen incident. Yeah, she says that the dispute took place with regard to the yelling and the discussion about who was having sexual favors. She says that there was no specific direction that was given to her to administer the oxygen. And Jody Osborne said that Jody is the higher-up person and demanded that Kroll give the oxygen to the patient, and Kroll didn't do that. Correct. And that incident was reported to Binns, and Binns then, correct me when I'm wrong, that day Binns ordered counseling? Correct. Was it clear from the record who was going to pay for the counseling? The record is pretty clear that she would have to pay for the counseling herself, that the White Lake Ambulance Authority was not going to pay for the counseling. And is that in conflict with the EEOC regulations? It is, yeah. Because those regulations require that the employer, if they're going to demand a medical exam, must pay for it. Is that correct? They do, Your Honor. One last thing that I want to talk about as my time is ticking away here is to get back about- Would she have submitted to it if it had been paid for? I mean, does this case go away if they pay for it? We'll never know that, Your Honor. I'm not sure. I don't think that that was a determining issue. There's no evidence in the record about it. Well, didn't she say that she agreed that she could benefit from counseling, but she couldn't afford to pay for it? Her testimony was that she needed counseling as a result, essentially, of what happened with regard to the termination of her employment. So she says, and her father testified, that at the time of the termination, there was a discussion of counseling in connection with emotional distress related to the termination itself. Okay. I know your yellow light is on, but I want to ask you one other question. So going back to the case at large here, what do you assert is the focused, genuine issue of material fact that makes this case inappropriate for summary judgment? Two things, Your Honor. First is there is a dispute about the reason why this medical examination was ordered in the first place. In nearly all of the cases that are cited in both of the briefs, the dispute was not about what the motive was. The dispute was whether or not there was enough evidence for a good faith determination that a medical examination could take place. So this case is unique in that we have this whole other reason out there that White Lake Ambulance Authority, I think, will concede is an improper reason for demanding a medical examination. The other issue that's unique about this case, Your Honor, and I concede that it is improper for an EMT driver to be talking or texting on a cell phone, but the response to that is to apply the progressive discipline policy that exists. There was no medical examination, excuse me, there was no medical consult or medical information that was secured by the employer to determine whether or not a medical examination was appropriate in the first place. In other words, when you look at all of these cases that are cited, in a vast majority of them, the employer actually consults with someone with a medical background before they make the decision to require the employee to submit to a medical examination. That did not occur in this case. So this motive point, you say it's unique, and I'm trying to figure out how much of a role it really has to play in this case. So let's just imagine, for the sake of argument, that it's undisputed that she did all these things on the job, and now just we're in hypothetical land, so you're not making concessions. You know, she was doing more. So she's violating lots of policies related to this ambulance service. For whatever reason, all of the violations suggest some psychological instability. All right, that's what's suggested. It seems to me the case, you still lose as a matter of law, even if the employer, the decision maker, has this armchair psychology thought motive that's wrong. In other words, I'm just not sure why that makes a difference if hypothetically, I know you don't concede this, if hypothetically the objective evidence shows, well, yeah, those are really problematic, and a mental exam relates to those particular problems. So, you know, the fact that the decision maker says, oh, she's in a bad relationship, you know, whatever that motive is, it just doesn't seem to me you suddenly can get out from under these other problems by saying, well, there was a bad motive. If the other problems by themselves as a matter of law would justify a mental exam. Here's the reason why I think I can, Your Honor, and that is because the employer doesn't do any sort of medical review before they make the decision to have her submit to this counseling. So people can be talking on the cell phones for all sorts of different reasons unrelated to whether or not they have a mental illness. If the employer jumps to the conclusion that the reason is because of a mental illness without consulting a medical professional, that's where I think the ADA is violated, even if the employer has a pure motive. It says that the decision maker has to consult a doctor before. We have cases that say that's a black-letter rule. The Denman v. Davy Tree expert case, and I think you were on the panel of that case, and it did hold that the employer in those circumstances properly ordered a medical examination. But it talks about and cites to 29 CFR 160.30.2R, which says that if you are going to try to establish that the employee has issues that need to be resolved through a mental exam, then it must be based on a, quote, reasonable medical judgment. And in that case, and in lots of the other cases. Do the regs say that? Are you saying the regs? Forget our case law for a second. You're saying the regs say you can't demand this without consulting a medical expert. It's not stuff that's objectively would justify doing this if you were a doctor after the fact. You're saying before the fact. It's part of the process. Yes, Your Honor. That's 29 CFR 160.30.2R. It's also cited in the Denman case. Okay. Well, I'll ask the other side about this. Thank you. Is he right about that? I mean, because that seems to simplify the whole case. You have to talk to a doctor first before you impose this on somebody. Your Honor, Michael Bogren on behalf of White Lake Ambulance Authority. He is not correct. What does the regs say? The regs say that the actual determination that an employee constitutes a direct threat has to be based on a reasonable medical judgment, which is the examination. You don't need an examination to get an examination, which is essentially what the plaintiff is arguing and what this court explicitly rejected in the Prevost case. In the Prevost case. He says in Davey we said this very thing. In Davey, the court cited the reg, which talks about the determination of posing a threat, not the inquiry into whether you are a threat. That's a completely distinct thing, Your Honor, because if there's a determination that an employee poses a threat, then there's a whole different set of accommodations that the employer is, I don't want to say burdened with, but looks to rather than in a normal case of disability when it's a different set of accommodations and frankly a wider range of accommodations that the employer would have to undertake. What about Judge Moore's point that the regs say you can't impose the cost on the employee? Well, Your Honor, this is where things get a little bit convoluted. And I want to correct one thing that counsel said. He said that when we were here the first time, this court ruled that this counseling was a medical examination, and that's simply not correct. What this court ruled was that there was sufficient evidence in the record to allow the finder of fact to determine that it might be an examination. Our position was it was never an examination in the beginning, which is why we didn't offer to pay for it, because it wasn't a fitness for duty examination. But we're here now. Well, you're trying to avoid a jury trial, and you've just, I think, acknowledged that there's a triable issue of fact after our first decision over whether it could be characterized as a medical exam required. Well, that's what this court ruled. I know. So not much to do about it now. So now we get to the second question of was there a reason, a business necessity, for the action that was taken. And it's our position that even assuming that was an examination, there was a business necessity that justified it. What did Bins know when he ordered the psychological counseling? Your Honor, we've set forth pages 33 through, I believe, 36 in our brief, the testimony from a number of witnesses who testified that they told Bins a number of things. Jody Osborne and Mark Terpstra testified that they informed Bins that the plaintiff was distraught, was engaged in telephone conversations in which she was yelling, and was texting while driving, and that they first confronted the plaintiff about those allegations, and when the plaintiff essentially ignored them, they went to Bins and expressed their concern. And what did Bins say he knew? Bins testified that he knew that there, that he remembered that there was an incident involving use of a cell phone while driving. That was attributed to Crowell? Yes, Your Honor. So there's one incident of using a cell phone while driving. That's what he said that he remembered. And the failure to administer oxygen. Okay. Why would those two pieces of information warrant psychological counseling? Well, with all due respect, Your Honor, there was a lot more than that when it was ordered. The fact that he didn't remember it two years later at his deposition doesn't mean he didn't know it at the time. Are you saying then that the two incidents do not warrant psychological counseling? You're relying on other information. No, Your Honor. Okay, so answer my question. Why would the two incidents warrant psychological counseling? Because, Your Honor, if an EMT who is trained to deal with crisis and stress is in the position where she ignores an order to give treatment to a patient and is involved in conversations while on the job while operating an ambulance. A conversation is all we know. We have these two incidents. It seems to me to be most unusual to order psychological counseling for someone who is violating work rules or safety rules. It seems to me that the logical thing is to have normal disciplinary processes work. And the additional factor that is in the evidence in this case is that Bins has ordered psychological counseling for moral reasons for other employees so that Holm, somebody rather, was ordered to have psychological counseling because of his affairs and other kinds of activities. And so it seems that this is really not a counseling ordered appropriately in this case. And I think that you're painting a very different picture of this based on one view of the evidence. And your opponent has a different view of the evidence. And it seems to me exactly the kind of thing that a trier of fact, i.e. a jury, should be deciding. Again, Your Honor, I don't think that this court can simply ignore evidence that Mr. Bins doesn't say it didn't happen, says he can't remember it. Doesn't Kroll deny a lot of it, though? She denies some of it, Your Honor. But, I mean, aren't we stuck with that? No, I don't believe so, Your Honor, because the issue isn't whether it actually happened or not. The issue is whether the employer has a reasonable belief based on objective evidence. But how can we make that determination of whether he had a reasonable belief or not if he can't remember it? I'm sorry, are you making an honest belief point? Not at all, Your Honor. In fact, this court, again, in the Sullivan case, explicitly rejected the idea that the subjective intent of the employer mattered. It said the honest belief defense would be a valid defense if the employer's intent mattered. It does not matter in this case. That's what this court held in Sullivan, that the subjective intent does not matter in an examination case. But you're still stuck. You've still got to have the facts that you're still saying things happened. And maybe you're saying six things happened if you add every single witness up. And she's saying, well, no, only two of them happened. And even the two didn't happen the way they say it. So now we're stuck with what really happened. Well, no, Your Honor, I don't believe that's true because the EEOC regs say that the employer has to have a reasonable belief based on objective facts. And they say, one of the questions that they say, and it's cited, I believe, in both of our briefs, is can the employer rely on statements of a third party? And the answer is yes. And they give five criterion for what is an indicia of whether this is reliable information. But it has to be objective evidence obtained prior to making or requiring a medical examination. Correct. So the fact question, which I don't know where the facts are here, but the fact question is what did Bins know at the time he ordered the psychological counseling? And so far as we have undisputed testimony, there are two things he knew. One is that there was the incident involving oxygen, which Kroll agrees to a certain extent happened. And the second is that there was one incident that Bins was told involving the texting. Your Honor, I disagree that that's the only undisputed evidence that there is. All of the co-employees who testified, testified that they informed Mr. Bins of these incidents before April 28th of 08. Not after the fact as plaintiff contends in response to the EEOC charge. They all testified that they, and in fact, one of the plaintiff's friends, Kathy Sturgis, testified that Bins approached her and said, I've been hearing a lot of complaints and a lot of talk about her behavior. What do you think about it? And she testified that she said she too was concerned. But, you know, I've been listening to this, and I think what you're asking us to do, first of all, is to credit the testimony of these witnesses who say we told Bins. We've got Bins who says, I don't remember. He remembers this one incident. And our job here is not to weigh the evidence and make those credibility determinations. We have to determine whether or not there is a genuine issue of material fact based on the objective evidence in the case. And we have to, just like we have to, you're asking us to credit these other people who said certain things. We've got in the record the testimony of Ms. Crow who says certain things. And I think that's why I have difficulty with your position that based on the record we're faced with, that it does not show a genuine issue of material fact, because it certainly seems to me that everything you've argued sort of supports the notion that the trial effect ought to determine these issues and decide the very fact issues that you're asking us to either look at or discount. Well, Your Honor, if that's the case, then no case can ever obtain summary judgment, because a plaintiff can simply say, you don't believe that witness. I don't have anything to refute his testimony, but don't believe him. That's for a jury to decide whether he's truthful or not. I don't think that's what this record says. Well, Your Honor, the standard, though, is not whether Crow admits it or not. The standard is whether the employer has objective information. So this is the point I'm trying to figure out. So you said the regs specifically allow an employer to rely on third-party witnesses, right? Yes, Your Honor. And I'm sure that makes perfect sense here. But what I'm struggling with is, but that doesn't mean that what the employer can do is they put their witness on, the witness or affidavit or deposition, and says, here's the cell phone incident that happened on April 25th. The reg can't mean that the plaintiff isn't allowed to say in response in her deposition, well, wait, on April 25th I was on vacation in Jamaica, right? Agree with me on that. You have to agree with me on that. No? No, Your Honor, I don't. Why? How? Your Honor, because I think. . . It's just a complete lie. My hypothetical is just a complete lie. The person is out of the country, the records show she was on vacation for seven days, and this third party is saying she was yelling into a cell phone in distraught. Your Honor, with all due respect. . . Just tell me the case. Tell me the case, because otherwise I'm going to be very hesitant to trust you're just saying it because it makes no sense to me. Your Honor, what I'm saying is that the plaintiff is not entitled to a mini-trial on these allegations. This isn't a mini-trial. This is classic summary judgment. Undisputed, you know, material undisputed facts. You win as a matter of law, great. But if they're disputed and they're material, that's where you start to run into trouble. But, Your Honor, the issue is not whether there was justification for a termination. The issue is whether there was enough objective evidence to allow the employer to obtain an examination. My hypothetical is the decision maker observes nothing. He has four third party witnesses all testifying to outrageous conduct by the plaintiff in this case, and she gets on the stand, and I was out of the country. Every single incident, I was out of the country. You're saying there's no jury trial over whether the third party people were lying? I'm saying, Your Honor, that if the employer knew that before the examination was ordered, yes. No, that's not my hypothetical. If the employer didn't know it and had no reason to believe that those people were lying and didn't know the plaintiff was out of the country, then I say no. The employer would be entitled to summary judgment. If the employer, if the boss knew she was out of the country for that week and you get five people come in and say during that week she did X, Y, and Z, and the employer knows she's not in the country, I would agree with you. But if he has no basis to believe that those people are lying or have a reason to lie, then I think under the regs and under the case law, if there is an objective basis for the belief and that she poses a threat or may not be able to fulfill the conditions of her employment, then we would be entitled to summary judgment. Even when the plaintiff gets up and says none of these things happened? As long as there was no basis for the employer to believe that to be true. In that hypothetical, does that presume some obligation to do some investigation on the part of the employer before the employer decides that some examination is warranted? Your Honor, I'm aware of nothing in the regs and no case that requires an independent investigation into the allegations. What if it just came from one person? I'm sorry, go ahead. How do you deal with the feature that this particular employer apparently believes that psychological counseling is necessary for employees who have extramarital affairs or other kinds of sexual behavior that he doesn't approve of? Your Honor, I would simply say, number one, he's unenlightened, but number two, that it is an objective standard, not a subjective standard. Under Sullivan, as long as there is objective information that supports the decision, it's an appropriate decision under the ADA. Say someone believes that heart disease is caused by some peculiar thing that the medical profession doesn't accept. That employer could rely on his own unique view about medical causation? If he had objective evidence that would allow an examination for a heart ailment to take place. He has to have objective evidence, and that has to be, for instance, some kind of, maybe not an actual consultation with a doctor, but he's read studies in the AMA journal or something like that? Not necessarily that, Your Honor. This situation, Ms. Kroll is sent for a heart examination, and he'd received reports from co-employees who were saying that she was complaining of chest pains. She was complaining of pains in her arm. She passed out. She said she was too tired to undertake treatment in a certain situation. There has to be objective evidence to support what it is that you're sending them for. But the fact that he might think that because the moon's in the full phase, that's why she's having a heart problem doesn't take away from the fact that if there's objective evidence to justify it, he's entitled to send her. Thank you. Can I just ask one other quick question? Yes. If the employer has a good faith belief that a medical examination is justified, isn't it reasonable to assume that the employer then would pay for that examination? And if that cost is shifted to the employee, doesn't that kind of cut against your argument there? Again, Your Honor, if this were a fitness for duty examination, I would absolutely agree with you, and the regs would require that to be paid for by the employer. But don't the regs require it to be paid for if it's a medical exam of an existing employee? Yes, it does, Your Honor. Aren't we stuck with that in this phase of the case? Except that's not what the complaint is. The complaint is that she shouldn't have been sent in the first place, not that we didn't pay for it. Well, she was told, as I understand her view of the facts, she was told, go have psychological counseling. You need to pay for it, and you will not be able to work unless you have psychological counseling. That's correct. Any other? Can I just, this is the last point. I mean, I know you don't agree with our first take on this case, but we're now, that's the way the case is. This is a medical examination. It seems to me, I guess I'm struggling with why that isn't the end of this phase of the case. In other words, we have to take this as a required medical exam. We have regs that say you can't impose this on people and ask them to pay for it. I guess I'm struggling why anything else matters. I mean, you preserve your right to appeal, to seek cert, all that other stuff, but I don't, I guess I'm struggling with why that isn't the simplest path. I'm not a happy path for your client, but isn't that the simplest path? Respectfully, Your Honor, I don't believe so. I mean, this case has not been litigated on that issue. That issue has not been an issue. But there's no answer to it. I'm not hearing an answer to it. Well, the answer is, as you said, we didn't consider this an examination, so we didn't offer to pay for it. Right, but that doesn't help you now. That's what it is, Your Honor. I don't have a different answer. When this case went back to the district court, I think you or your opponent said that it was basically considered on the record that it already existed. Was there anything new added before the district court rendered his decision on summary judgment the second time around? There was not, Your Honor. The discovery had been completed before Judge Quist ruled on the first motion. The motions were simply refiled and then the argument. So the same motions were refiled? Well. Because they dealt with? Different issues. Were they new motions? Well, not new. We had raised this issue in the first motion, the business necessity, and Judge Quist didn't reach it.  So on remand, he simply re-argued and then ruled on the business necessity. When you say he re-argued, do you mean? The attorneys. The attorneys did have an oral argument in front of him? That's my memory. No. All right. So you relied, not that I'm saying it's your fault, but you both relied on your prior briefs and the district judge ruled on the basis of the pre-existing evidence and the prior briefs on an issue that had been raised prior to our decision on the medical exam. That's my understanding of it, Your Honor. Okay. Thank you. Thank you, Your Honor. Just to add to that point, Your Honor, there were very short supplemental briefs that were also filed just talking about new law. I just have a couple of points. The first thing I want to do is to address Judge Sutton's question about this regulation because during the time period that Mr. Bogren was speaking, I had an opportunity to pull that up. So this is what it says. Give the number, if you would. Yeah. It's 1628 CFR 1630.2. It's the definitions sections that talks about this issue of medical examinations. And R talks about direct threat, which is part of the determination of whether or not something is a business necessity because you can show a business necessity by showing a direct threat. And the reg reads, direct threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a direct threat shall be based on an individual assessment of the individual's present ability to safely perform the essential functions of the job. The assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and or the best available objective evidence in determining whether an individual would pose a direct threat. The factors to be considered include, one, the duration of the risk, two, the nature and severity of the potential harm, three, the likelihood that the potential harm will occur, and four, the imminence of the potential harm. So I disagree with Mr. Bogren's statement that the issue of medical judgment only comes in after the employee is receiving the medical treatment or undergoing the medical examination. But, I mean, you still look at the objective facts and whether it would be reasonable medically to say this justifies X. You do. Otherwise, we'd have this problem of compelling a medical exam, which the whole problem here is not lightly compelling medical exams. So we're not going to say compelling medical exams to decide whether you can have a medical exam. So it takes you back to the objective facts, I think. It does, but I think it explains why some employers will get a curbside consult, if you will, before they order a medical examination. Probably a good idea if you can afford it. And, of course, the facts are clear in this case that that did not take place. The other point, Your Honor, that I wanted to bring out, and then I'm going to conclude. You want us to overrule, I forget, the case that says subjective motive is irrelevant? No, I don't, Your Honor. I think that the critical issue is what does the employer know? Because the regs and the case law make it pretty clear that that's what you're looking at. And so I don't think you have to get to the subjective versus objective determination, although I do think that in an unusual situation like this, where the employer has this sort of crazy motive out there to justify the medical examination, that you need to take that into consideration. What's your best case for this point, this debate we were having? You know, the regs say you can rely on third-party witnesses, and so we had this back and forth. Well, what do you do if the plaintiff says it never happened? And your friend on the other side is saying, well, you know, as long as it was reasonable to hear this, the question is what they learned before they, you know, what were the objective facts out there as reported to them by third parties or as observed by them? You don't then factor in whether the plaintiff disagrees or not on summary judgment in this type of setting. What's your best case that says, no, no, no, that's not how it works? I think that the plaintiff is allowed to say, no, it never happened, and that becomes a material triable issue of fact about whether the medical examination was justified. I think that the best place to look for the answer to that question is in the enforcement guidelines because they give a number of examples. But you don't have a case that says. I don't have a case that talks about that. All right. Well, we'll look at the examples, okay? Yeah. But what's important, I think, about the examples is they say that an employer cannot rely upon rumor or innuendo. They say the stronger the evidence, that is, if you have the decision maker that either observes the activity that justifies the medical exam or talks directly to the plaintiff and the plaintiff acknowledges that there's a medical issue, in those cases the courts say that that's fine. And the other examples where somebody says that somebody said that somebody did something, the courts say, hold on, that's not an objective basis. And I think that a lot of what we have in here is that rumor and innuendo with regard to what happened in the parking lot and why she was crying and those sorts of things. And a basic problem that I think both sides agree is a fact here is that Bins in his deposition said he didn't recall these various reports that other people said they had made to him. What do you do with that lack of recall on the part of the decision maker? I think it was Judge Donald that pointed out that the law from the Supreme Court and now part of the Sixth Circuit is that a plaintiff can attack a defendant witness's testimony on a point in an employment discrimination case and say, no, jury, you don't have to believe that. And I think if the witness who makes the decision, in this case Bin, says, I don't recall that, well, that's evidence that I could use with a trier of fact to say this really wasn't an objective basis because, look, the decision maker doesn't even recall that the conversation took place. Just one other point. Did Mr. Bins say in the record that prior to this incident he had had no issues or no problems with Ms. Kroll providing care to patients? So she didn't have a history of a lack of care to her patients, is that correct? Yeah, the record is quite clear that she was very good EMT. Okay. Thank you, Your Honors. Thank you both for your argument. The case will be submitted with the clerk recess court, please.